Donna H. Clancy, Esq.
**THE CLANCY LAW FIRM, P.C**.
40 Wall Street, 61st Floor
New York, New York 10005
(212) 747-1744
*Attorney for Plaintiff James Cezus,*
*and other similarly situated employees*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| JAMES CEZUS, and other similarly situated employees, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:21-cv-00792 |
| vs. | ) ) | Electronically Filed |
| KONICA MINOLTA BUSINESS SOLUTIONS U.S.A., INC., | ) ) ) | **AMENDED COMPLAINT** |
| Defendant. | ) ) ) | |

Plaintiff, James Cezus, and other similarly situated employees, by way of complaint, states:

**PRELIMINARY STATEMENT**

1. This is a civil enforcement action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq*., brought by Plaintiff, on behalf of himself and the proposed Class, who are eligible participants in Konica Minolta Business Solutions, U.S.A, Inc.'s severance and/or retirement plan entitled Amended and Restated Konica Minolta Severance Plan adopted and effective January 1, 2015 ("The Plan" or "Severance Plan").

2. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), Plaintiff seeks to recover, both for himself and each member of the Class, with interest, the severance benefits, including, but not limited to salary continuation benefits, and certain welfare benefits, (the "Severance Benefits") to which they are entitled under the terms of the Plan, and which were wrongfully denied to them.

3. Plaintiff, at age 56, and other similarly situated employees were terminated under the guise of layoffs, elimination of positions and/or purported job relocation.

4. After 33 years of employment, on or about December 14, 2018, Defendant terminated Plaintiff, purportedly because his Technology Support Manager position was being "relocated" to Defendant's Ramsey, New Jersey facility.

5. Defendant represented to Plaintiff Cezus and other similarly situated employees that if they did not accept the relocation of position, their positions would be filled by other applicants.

6. However, Defendant eliminated Plaintiff Cezus' position as a Technology Support Manager and the positions of other similarly situated employees in his department at Defendant's Windsor, Connecticut facility and never rehired anyone to replace them.

7. To circumvent The Plan's eligibility requirements based on an employee incurring a "Termination of Employment" or position elimination due to an "Eligible Event" and avoid paying monetary benefits to Plaintiff Cezus and approximately 400 employees in Defendant's Windsor, Connecticut Facility, Defendant purported to offer their employees a "job relocation" to Defendant's Ramsey, New Jersey facility knowing that its employees, who nearly all resided in Connecticut, were not able to travel daily more than 240 miles round trip from Connecticut to New Jersey and would not be able to accept their job relocation.

8.     As anticipated by Defendant, only approximately 10% of the 450 Windsor, Connecticut employees were able to accept the New Jersey job relocation.  Out of the 400 who did not accept the purported "job relocation" from Connecticut to New Jersey, 80% of them were over 40.

9.     Pursuant to Defendant's defined Severance Plan, Defendant designated Plaintiff Cezus' position and the positions of similarly situated employees as "job relocations" and not "position eliminations" or "Terminations due to an "Eligible Event.""

10.     Once these long-term employees confirmed their inability to accept the job relocations, Defendant terminated them without providing any severance and/or retirement benefits under its Severance Plan or any other plan.

11.     At all relevant times, during Plaintiff Cezus' employment with Defendant, Plaintiff and members of his protected class of employees were entitled to the protections of ERISA as Plan Participants.

12.     Plaintiff is entitled to protection under ERISA as it applies to anyone who works for a corporation such as Defendant who owes fiduciary duties to its employees as it has discretionary authority or control of certain employer-sponsored retirement or healthcare plans.

13.     At all relevant times, the majority of Defendant's employees working at the Windsor, Connecticut Office were long tenured employees who fulfilled more than 20 years of service for Defendant.

14.     As participants under the Plan, Plaintiffs were entitled to be treated fairly and without regard to race, color, religion, sex, *age,* marital status, national origin, sexual orientation, gender identification, citizenship status, affectional preference, or veteran's status under the Severance Plan's Non-Discrimination provision, 8.1

15.     Plaintiff's age and tenure, and that of other similarly situated employees were factors that were considered for "job relocation" and termination by Defendant and placed on its "Relocation/Termination List."

16.     Defendant willfully misrepresented to Plaintiffs that their positions were not being eliminated and/or consolidated as part of a workforce reduction and rather was a purported "job relocation" business strategy.

17.     Tenured employees of Defendant, if eligible would receive a higher severance based on their number of service years under the Plan, *i.e.,* the longer the service, the larger the severance entitlement to eligible participants.

18.     Because Defendant did not designate Plaintiffs' positions as "eliminated," Plaintiff and other similarly situated employees were deemed ineligible for any severance and/or welfare or retirement benefits upon their termination under Defendant's Severance Plan.

19.     As a result of Defendant's misrepresentations, Plaintiff and other similarly situated employees were denied protection and benefits under ERISA and suffered economic damages including, but not limited to, salary continuation and/or severance and/or retirement payments that Defendant offered and paid to other terminated employees selected under their Reduction in Workforce policies that were outside of the Plaintiff's protected class.

20.     Plaintiffs allege that the Plan Administrator abused its discretion in denying their entitlement for severance benefits by failing to determine eligibility for benefits in accordance with the provisions of the Severance Plan and by failing to construe in good faith the terms of the Severance Plan.

21.     Plaintiffs allege that the Plan Administrator abused its discretion by failing to consider the inherent conflict of interest by Defendant's Senior Executive decision makers in

their selection of employees for "job relocation" or "termination' or "job elimination" and who had a financial incentive to deny benefit claims to reduce Company expenses.

22.    Plaintiffs allege that the Plan Administrator abused its discretion by relying solely on Senior Executive assigning labels to their actions, without properly reviewing to determine whether the jobs were in fact eliminated and not filled and whether the treatment of these employees was discriminatory and/or in violation of the terms of the Plan and/or ERISA.

23.    Plaintiffs allege that their positions were intentionally eliminated and/or consolidated in Defendant's planned reduction in force to render them ineligible for benefits under the Plan.

24.    Plaintiffs respectfully ask the Court, *inter alia*, (1) to certify this case as a class action, and (2) to declare that the Plaintiffs and the Class are entitled to receive Severance Benefits under Defendant's Severance Plan pursuant to ERISA.

## JURISDICTION AND VENUE

25.    This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331, because this is a civil action arising under the laws of the United States. Specifically, this action is brought under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

26.    This Court has personal jurisdiction over the Defendant because it transacts business in, and/or has significant contacts with this District and because ERISA provides for nationwide service of process under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

27.    Venue is proper in this District under ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) for at least the following reasons: (a) the alleged breaches took place in this District because the denial of benefits sought through this action occurred in this District and/or (b) Defendant may

be found in this District and/or have significant contacts with this District because it has facilities in this District and the Plan covered participants in this District.

## STATEMENT OF FACTS

28.     Plaintiff, James Cezus is a 58-year-old male residing in the County of Hartford, State of Connecticut.

29.     Plaintiff Cezus was employed by Defendant Konica Minolta Business Solutions U.S.A., Inc. ("Konica Minolta") from January 21, 1985, to on or about December 14, 2018, and was, at all relevant times, a participant in the Severance Plan as that term is defined in ERISA § 3(7), 29 U.S.C. § 1002(7).

30.     During the period of Plaintiff Cezus' 33 years of employment with Defendant, Plaintiff met and/or exceeded all of Defendant's legitimate expectations in the performance of his duties.

31.     As one of Defendant's longest tenured employees, Defendant, by their Vice President, James Ingrassia, Solutions Support Division, has stated that:

> "Jim (Cezus) has been with Konica Minolta for many years and has always been an exemplary employee. Jim's dedication and attention to detail define his personality and character. Jim has managed multiple aspects of our call center, always working to inspire our advisors while creating an atmosphere of increased knowledge and personal growth. Jim is definitely a team player any Corporation would be fortunate to employ. *Unfortunately, we decided to **consolidate** all Corporate Service and Support functions, previously located in Windsor, Ct., into our Ramsey, New Jersey campus. It was this decision, which forced many of our Connecticut employees to accept termination of employment as a consequence of not being able to move themselves and their families to New Jersey.*"[1](Emphasis added).

32.     Defendant, Konica Minolta, is upon information and belief, a foreign corporation authorized to conduct business in the State of New Jersey.

---

[1] Letter of Reference for Plaintiff James Cezus from Vice President, James Ingrassia.

33.     Defendant, Konica Minolta is, upon information and belief, a foreign corporation transacting business in the State of New Jersey.

34.     Defendant, Konica Minolta is, upon information and belief, a wholly owned direct subsidiary of the Japanese multinational technology parent company, Konica Minolta, Inc., that manufactures imaged-based products services offering equipment and instruments for office, industrial and healthcare uses.

35.     Defendant, Konica Minolta, upon information and belief, has its principal place of business at 100 Williams Drive, Ramsey, New Jersey.

36.     Defendant, Konica Minolta upon information and belief, operates its main corporate office out of Ramsey, New Jersey.

37.     Defendant, Konica Minolta. is, upon information and belief, a company that offers end-to-end product services to businesses operating in the United States. It manufactures, sells and services office equipment, primarily multifunctional peripherals, color and monochrome laser printers for graphics and professional production print systems, and the company has 115 direct sales locations and approximately 350 dealer partners in the United States. [2]

38.     From January 21, 1985, to on or about December 14, 2018, Plaintiff Cezus was employed by Defendant at its Windsor, Connecticut office located at 500 Day Hill Road, Windsor, Connecticut.

39.     At all relevant times, Plaintiff Cezus held the position of Technology Support Manager at Defendant's Windsor, Connecticut Office.

---

[2] https://www.konicaminolta.com/us-en/index.html

40.     In 2018, Plaintiff Cezus reported to Bill Caruso, Director of Technical Support. Mr. Caruso reported to Vice President, James Ingrassia of the Solutions Support Division located at 100 Williams Drive, Ramsey, New Jersey. Mr. Ingrassia reported to the Chief Executive Office ("CEO''), Rick Taylor, at the Ramsey, New Jersey United States corporate headquarters.

41.     In or about 2018, Defendant implemented a reduction in force where Defendant selected certain positions for elimination/termination and/or for purported job relocation from the Windsor, Connecticut Office.

42.     On or about October 26, 2018, Defendant informed Plaintiff Cezus and other similarly situated employees that it had the "option" to relocate their position to the Ramsey, New Jersey office from the Windsor, Connecticut office.

43.     In 2018, Defendant employed approximately 450 employees at their Windsor, Connecticut facility.

44.     In 2018, Defendant also operated a facility in Ramsey, New Jersey where it maintained their corporate office. The Ramsey, New Jersey facility was significantly smaller in size and at all relevant times, was filled to capacity with employees' workstations and corporate offices.

45.     In or about 2018, Defendant represented to Plaintiff and other similarly situated employees that Defendant was closing its Windsor, Connecticut Facility that housed its approximately 450 employees.

46.     In 2018, Defendant purported to offer Plaintiff and other similarly situated employees who had completed service years of 20+ years, a "job relocation" and represented that their jobs were remaining open and being relocated to the Ramsey, New Jersey office, located more than 123 miles away from their Windsor, Connecticut Office.

47.    Defendant represented to Plaintiff and his similarly situated coworkers who held these essential positions in Defendant's business that they would be fired if they elected not to relocate to Ramsey, New Jersey, which they reasonably relied upon.

48.    Plaintiff and other similarly situated employees in his department expressed that they could not feasibly travel to and from their Connecticut homes to the Ramsey, New Jersey Office. Their rejection of the relocation resulted in termination including Plaintiff's and other employees within Plaintiff's department.  If, as Defendant had represented, these positions were being relocated, then Defendant would have had numerous open positions to be filled in Ramsey.

49.    Defendant represented to its employees that its positions at the Windsor, Connecticut facility were not selected for elimination under Defendant's layoff or reduction in force, and therefore, they were not eligible for any severance or retirement benefits, which they reasonably relied upon.

50.    However, Plaintiff has learned that at the time of Defendant's decision-making, Defendant did not intend to keep those positions open, that Defendant did not advertise internally or externally for these open positions, that Defendant consolidated and/or eliminated these open positions, and that Defendant never hired anyone to fill them.

51.    Defendant did not replace Plaintiff in his position at its Ramsey, New Jersey Office.

52.    Defendant did not replace other similarly situated positions at its Ramsey, New Jersey Office.

53.     Defendant did not close its Windsor, Connecticut Facility and continues to conduct business and house various employees there. Plaintiff's position (or essential job duties) was never filled by any employee.

54.     Upon information and belief, Defendant did not hire employees to replace Plaintiff and other similarly situated and eligible participants under the Plan because Defendant eliminated those positions and outsourced the work to outside vendors and/or third-party dealers to perform the essential functions of those jobs.

55.     Upon information and belief, Defendant suffered no business interruption as a result of the loss of 400 employees who were unable to relocate and were terminated.

56.     Plaintiff has also learned that although some employees elected to relocate, not all who did so were retained in their positions. For example, another long tenured employee, Robert Winter, a manager within Plaintiff's department, was offered the "job relocation" to the Ramsey, New Jersey Office, which he, along with only 10% of the 450 Windsor employees accepted. Winter subsequently relocated to Ramsey, New Jersey.  However, his job was eliminated just months after commencing his new position.

57.     Upon information and belief, within the same year in 2019, Defendant initiated another lay off of its employees.

58.     Upon information and belief, Defendant selected employees, who were not similarly situated to Plaintiff and the proposed class members, to receive benefits under its Severance and/or Retirement Plan(s) and those employees qualified for and received severance benefits and/or other payments.

59.     Defendant's disparate application(s) of its Plan's provisions supports Plaintiff's allegations that Defendant's classification of its "job relocation" of employees was merely a

guise for termination which Defendant used to circumvent payment of severance to Plaintiff and those similarly situated employees.

60.     Had Defendant disclosed its true intent and properly designated Plaintiff's position and those similarly situated as "eliminated" and removed from its organization, Plaintiffs would have qualified for severance, welfare and/or retirement benefits under Defendant's Severance Plan.

61.     Defendant's failure to comply with ERISA's protections against discrimination and unfair treatment adversely impacted Plaintiff and similarly situated older workers, and in particular, caused Plaintiffs' damages.

62.     Defendant's failure to comply with ERISA's protections regarding severance adversely impacted Plaintiff and his similarly situated employees, and in particular, caused Plaintiffs' damages.

63.     As a result of Defendant's violations, Plaintiffs suffered damages including, but not limited to, loss of earnings, benefits, costs, and attorneys' fees.


**DEFENDANT KONICA MINOLTA'S DEFINED SEVERANCE PLAN**

64.     Defendant established its Severance Plan, *inter alia*, to provide severance benefits to employees who are terminated from employment with Konica Minolta who meet the eligibility conditions. The Plan is effective January 1, 2015.

65.     Defendant's Board of Directors appointed a Plan Administrator to administer the provisions of The Plan pursuant to ERISA. The Plan Administrator appointed is one of Defendant's Directors titled "Human Resources (HR) Business Partner" and employee of Defendant.

66.     Under The Plan, the Plan Administrator shall have the exclusive responsibility and discretion to decide all matters relating to eligibility, coverage, or benefits under The Plan and to interpret all provisions of The Plan and to determine all matters relating to the operation and administration of The Plan, to the fullest extent permitted by law.

67.     The Plan defines a "Reduction in Force" as "the elimination by the Company of one or more employment positions for an indefinite period of time which the Company classifies as a Reduction in Force for purposes of The Plan."

68.     Under The Plan, Separation Pay shall be granted only to an employee who incurs a Termination of Employment due to an Eligible Event.

69.     Under The Plan, participants are eligible for benefits that consist of a cash payment ("Salary Continuation Benefits"), welfare benefits based on their Base Pay which is calculated at the employee's annual base salary in effect immediately preceding the employee's Termination of Employment.

70.     Under Section 3.3, for long tenured exempt employees of 17+ completed years of service, participating employees would receive 36 weeks of Severance and nine (9) months of COBRA, of which eight (8) weeks or less shall be paid in a single lump sum on the participant's next regular payday commencing the day following the date a general release agreement under Section 3.1.02 becomes effective and payments continue until fully paid.

**PLAINTIFF HAS MET THE PLAN'S ADMINISTRATIVE
REQUIREMENTS AND EXHAUSTED HIS REMEDIES UNDER ERISA**

71.     On February 22, 2021, Plaintiff requested Severance Benefits under The Plan.

72.     On May 18, 2021, by letter of The Plan Administrator, Stacey Lucariello, Director, HR Business Partner, employed by Defendant, advised that Plaintiff's benefits were denied based upon ineligibility.

73.     The May 18, 2021, Denial letter stated that, "Because Konica Minolta did not (i) eliminate Mr. Cezus' position for an indefinite period of time or (ii) classified the relocation as a Reduction in Force, Mr. Cezus did not incur a Termination of Employment due to an Eligible Event. See Plan at Section 2.5, 2.15, and 3.1. Moreover, even if there had been an Eligible Event, Mr. Cezus' decision not to accept a position in Ramsey, New Jersey made him ineligible to receive Severance Benefits. See Plan at Section 3.1.01."

76.     The Plan Administrator advised that Mr. Cezus had a right to appeal the decision within 60 days of the date of receipt of The Plan Administrator's May 18, 2021, Letter.

77.     In anticipation of his Appeal, by Letter of June 2, 2021, Plaintiff requested "all documents relied upon by the Plan Administrator in its decision to deny him benefits," including the following:

1.     **Copies of all documents or other information that was reviewed, considered, or relied upon in reaching the Plan's decision.**

2.     **Copies of any prior decisions made on claims made under the Severance Plan.**

3.     **A list of positions, and the persons holding those positions, that were subject to the purported relocation from Connecticut to New Jersey.**

4.     **An indication of which of the individuals listed in response to Request #2 above, actually relocated.**

5.     **An indication of which of the positions listed in response to Request #2 above were relocated to New Jersey as vacant positions.**

6.     **Documents indicating which of the vacant positions relocated from Connecticut to New Jersey, as identified in response to Request #4, were subsequently filed, and which remained vacant, for how long they remained vacant, and whether they were ultimately eliminated.**

**7.** **Documents demonstrating KMBS posted or advertised the vacant positions that were relocated from Connecticut to New Jersey, and for what period of time those positions were posted.**

**8.** **Any communications within KMBS regarding consideration of potential reduction in force applicable to any of its Windsor, CT operations, prior to the announcement of the purported "relocation" plan which was used to eliminate Mr. Cezus' position.**

**9.** **Any communications within KMBS regarding any estimates or expectations it had regarding the number of people subject to "relocation" who would accept the offer to move.**

**10.** **Any communications within KMBS regarding whether or not vacant positions relocated from Connecticut to New Jersey would be filled.**

78.     The Plan Administrator denied Plaintiff's request for documents by Letter dated June 24, 2021 and relied solely on its Plan documents to support its Decision.

79.     On July 17, 2021, within 60 days of receipt of The Plan Administrator's May 18, 2021, Decision denying his benefits, Plaintiff, Cezus timely filed his Appeal, which included an Appeal Letter and Declaration affirming under oath as follows:

**1.** **I am a former employee of Konica Minolta. I was employed from January 21, 1985, until I was terminated on December 18, 2018. I worked as Technology Support in the Windsor, CT office. I have filed a claim for severance benefits under the Konica Minolta Severance Plan. The Plan Administrator denied me benefits under the Plan and I submit this Declaration in support of my appeal of the decision to deny my benefits under the Plan.**

**2.** **The Plan provides for benefits for employees who are terminated under a lay off.**

**3.** **On or about October 26, 2018, KMBS informed me and my coworkers that our positions were not being eliminated but were going to be relocated to KMBS' Ramsey New Jersey office.**

**4.** **I could not relocate, and which I informed KMBS of this fact, I was terminated.**

**5.** **At that time, KMBS represented to me and my coworkers, approximately 450 of us that if we did not accept the position offered to us, our positions would be filled by other applicants. Typically, KMBS would post positions on its website under career opportunity, hire recruiters, and/or post jobs online with vendors such as Indeed.**

6.  After my termination, I discovered from my former coworkers that my Technology Support position, along with others in my Technology Support department were not filled. There were no job postings on KMBS's website or Indeed for jobs and in particular, my Technology Support position in Ramsey, New Jersey.

7.  Some of these positions have never been filled to this day, others were outsourced to dealers or independent contractors in Tampa, Florida and not "relocated" to the Ramsey, New Jersey office as represented by KMBS.

8.  I declare under penalty of perjury that the foregoing is true and correct.

80.  Plaintiff Cezus' Appeal Letter asserted that Defendant did not relocate Plaintiff's position and others, but, in fact, eliminated them from the Company. Given so, The Plan is required to pay benefits if it eliminates one or more Employment Positions for an indefinite period of time and as such, would constitute a Reduction in Force under Article 2.15.

81.  In his Appeal, Plaintiff further claimed that Defendant purported to offer their employees job relocation to its Ramsey, New Jersey Facility knowing that its employees, who nearly all resided in Connecticut, were not able to travel daily more than 240 miles roundtrip from Connecticut to New Jersey and would therefore not accept their job relocation.

82.  The offer of the relocated job that the Company knew or should have known would not be feasible for Windsor Employees to accept was a sham. The Company was counting on most, if not all, long tenured Windsor Employees who reside in Connecticut to decline to relocate themselves and their families for the Company to reap the benefits of its scheme.

83.  Given that the Company had ample time to discover and plan to avoid an interruption of business if these employees were not electing to relocate and if, in fact, these positions were not being eliminated, Defendant needed to engage in a massive hiring campaign to avoid any business interruption or adverse effect to its U.S. operations. However, it did not.

84.    Plaintiff further argued in his Appeal that if a Company can refuse to provide benefits to a Plan Participant simply by refusing to acknowledge when an Eligible Event has occurred, then ERISA's purpose of protecting employees by making the promises of ERISA-Covered Plans binding, is utterly thwarted.

85.    The Plan Administrator issued an Appeal Decision dated September 15, 2021, denying Plaintiff benefits under The Plan.

86.    In its Appeal Decision, The Plan Administrator stated that the Decision relied upon the following <u>facts</u>:

1.    **"Mr. Cezus' role and function, and those of his department were all relocated to KMBS's Ramsey, NJ office."**

2.    **"No resources in Mr. Cezus' department were redistributed to dealers or independent contractors".**

3.    **"The Technology Support staff was not eliminated and still functions in the Ramsey, NJ office."**

4.    **The functions it performs in the Ramsey office are the same as those it performed in the Windsor location."**

5.    **"All Windsor employees, including those in Technology Support, who elected to relocate were given positions in Ramsey.**

6.    **"*I have confirmed with Management* that had Mr. Cezus elected to relocate to New Jersey, he would have retained the same function and responsibilities.**

7.    **"His role is being performed *by someone else today* because Mr. Cezus did not elect to relocate to New Jersey".**

87.    Plaintiff requested on October 4, 2021, the documents that supported the Plan Administrator's alleged <u>facts</u> she relied upon to deny the Appeal for Benefits.

88.    Specifically, Plaintiff requested documentary evidence that supported any and all of the facts listed in #1-7 **including internal management memos, electronic communications regarding the decision to relocate, or redistribute any functions outside of KMBS, payroll**

and hiring records and employee profiles of the Technology Support staff employees in October 2018 through the present as stated that "his role is being performed by someone else today….". See 7 above.

89. Plaintiff further requested supporting relevant documents that were previously requested in his June 2, 2021, including the following:

1. **A list of positions, and the persons holding those positions, that were subject to the purported relocation from Connecticut to New Jersey.**

2. **An indication of which of the individuals listed in response to Request #1 above, actually relocated.**

3. **An indication of which of the positions listed in response to Request #1 above were relocated to New Jersey as vacant positions.**

4. **Documents indicating which of the vacant positions relocated from Connecticut to New Jersey, as identified in response to Request #3, were subsequently filled, and which remained vacant, for how long they remained vacant, and whether any were ultimately eliminated.**

5. **Documents demonstrating KMBS posted or advertised the vacant positions that were relocated from Connecticut to New Jersey, and for what period of time those positions were posted.**

6. **Any communications within KMBS regarding consideration of potential reduction in force applicable to any of its Windsor, CT operations, prior to the announcement of the purported "relocation" plan which was used to eliminate Mr. Cezus' position.**

7. **Any communications within KMBS regarding any estimates or expectations it had regarding the number of people subject to "relocation" who would accept the offer to move.**

8. **Any communications within KMBS regarding whether or not vacant positions relocated from Connecticut to New Jersey would be filled.**

9. **Any documents, including communications with KMBS personnel or management relied upon in support of the assertions made in the ruling that:**

   **"Mr. Cezus' role and function, and those of his department were all relocated to KMBS's Ramsey, NJ office."**

   **"No resources in Mr. Cezus' department were redistributed to dealers or independent contractors".**

**"The Technology Support staff was not eliminated and still functions in the Ramsey, NJ office."**

**"The functions it performs in the Ramsey office are the same as those it performed in the Windsor location."**

**"All Windsor employees, including those in Technology Support, who elected to relocate were given positions in Ramsey.**

**"I have confirmed with Management that had Mr. Cezus elected to relocate to New Jersey, he would have retained the same function and responsibilities.**

**"His role is being performed by someone else today because Mr. Cezus did not elect to relocate to New Jersey."**

90.     Plaintiff is entitled to a full and fair review of his claim under 29 CFR § 2560.503-1 (h)(1). In order to obtain a full and fair review, he is entitled to copies of documents and statements made by Defendant's Management relied upon by the Plan Administrator in her Decision to deny benefits under The Plan insofar as she stated: "I have confirmed with Management that had Mr. Cezus elected to relocate to New Jersey, he would have retained the same function and responsibilities. See § 76(6) above. No documents were provided to Mr. Cezus in response to his request.  No documents have been provided substantiating the numerous factual assertions which the Plan relied upon in making its decision.

91.     Plaintiff has been denied a full and fair review of his claim under 29 CFR 2560.503-1 (h)(1) in violation of his protected rights under ERISA.

92.     Plaintiff has been denied the relevant documents in connection with a full and review of his claim to which he is entitled under CFR 2560.503-1(h)(3).

93.     Plaintiff has fully exhausted his Administrative Requirements under The Plan and ERISA.

94.     Pursuant to The Plan Administrator's Appeal Decision dated September 15, 2021, the Administrative Process is now complete, and Mr. Cezus may file a lawsuit under Section 502(a) of ERISA.

## CLASS ACTION ALLEGATIONS UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

95.     Plaintiffs brings this action individually and as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following class: Participants in the Severance Plan, who, as employees of the Company, experienced Termination of Employment under the guise of relocating Plaintiff and similarly situated employees to new positions at a New Jersey facility of the Company which Defendant knew would be impossible for the proposed employee Class Members to accept and as such would suffer termination. As these employees were not intended to be replaced and their positions were planned to be eliminated and/or consolidated, these employees were eligible for, yet denied benefits under The Plan.

### A.  Numerosity

96.     On information and belief, the members of the Class are so numerous that joinder of all members is impracticable. Plaintiffs believe that the Class includes approximately 400 Windsor, Connecticut employees formerly employed by Defendant whose positions were affected by the Defendant's misclassification and work reduction policies and selection of employees on its "Relocation/Termination list."

### B.  Commonality

97.     The claims in this case raise numerous questions of fact and law that are and will be common to all members of the Class including the following:  (a)  The issues of liability are common to all members of the Class as those issues concern the interpretation and application of

19

provisions of the Plan that apply to all members of the class, including specifically the "Relocation/Termination List," and whether, as alleged, Defendant intended to eliminate the positions of putative class members, and merely use the terminology of relocation in order to avoid paying benefits under the Plan, and (b) The issues regarding the relief are also common to the members of the Class as the amount of relief will be based on benefits calculated in conformity with the proper interpretation of the Plan and ERISA.

### C. Typicality

98.     Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3).  Plaintiffs do not assert any claims relating to the Severance Plan in addition to or different than those of the Class.

### D. Adequacy

99**.**     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class because Plaintiffs have no interest antagonistic to or in conflict with the interests of the Class and because Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

### E.     Rule 23(b)(1)(A):

100.     The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied because the Plan Administrator has a legal obligation to interpret the terms of the Plan consistent for all similarly situated participants. As some of the primary issues in this case involve the interpretation of the terms of the Severance Plan, conflicting interpretation of the same Plan as to similarly situated participants creates the risk of establishing incompatible standards of conduct for the Plan and its administrator.

**F**.      **Rule 23(b)(1)(B)**:

101.    The requirements of Fed.R.Civ.P.23 (b)(1)(B) are satisfied because the primary issues in this case involve questions concerning the interpretation of the terms of the Severance Plan. As the Plan Administrator must interpret the Severance Plan consistently as to all similarly situated participants, resolution of the Federal question on this litigation, as a practical matter, would be dispositive of the interests of the other members of the Class or substantially impair or impeded their ability to protect their interests.

**G**.      **Rule 23(b)(2)**:

102.    The requirements of Fed, R. Civ. P. 23(b)(2) are met in this action because the Plan Administrator is required to interpret the Severance Plan consistently as to all similarly situated participants, and a result, the Severance Plan's actions affected all Class Members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class as a whole.

**H**.      **Rule 23(b)(3):**

103.    Alternatively, the requirements of Fed. R. Civ. P. 23(b)(3) are met in this action because (a) the questions of law and/or fact, including the proper interpretation of the terms of the Severance Plan, are not only common, but will predominate over any individual questions and (b) a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## COUNT ONE

### PLAINTIFFS ARE ENTITLED TO SEVERANCE BENEFITS UNDER
### ERISA § 503(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B)

104.    Plaintiffs repeat and reallege the allegations contained in all foregoing paragraphs herein.

105.    **ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B),** provides that a participant may bring a civil action "to recover benefits due to him under the terms of his Plan, to enforce his rights under the terms of The Plan, or to clarify his rights to future benefits under the terms of The Plan." Here, Plaintiffs have been denied the benefits owed to them under the terms of The Plan as they were wrongfully terminated under the guise of misclassified relocation that, under The Plan was an Eligible Event of Termination.

106.    Based on the facts alleged, Plaintiffs were terminated under an Eligibility Event and thus are entitled to benefits under The Plan.

107.    Based on the facts alleged, the Plan Administrator operated under an inherent conflict of interest.

108.    The Plan Administrator is a Director and Officer of the Defendant Company and is under the exclusive control, supervision, control, and management of the Defendant's Executive Management who make financial, personnel and operations decisions for the Defendant's economic benefit.

109.    Any payments made pursuant to the Severance Plan comes from Konica Minolta's corporate assets.

110.    The Plan Administrator relied solely on Executive Management's statements which could subjectively and arbitrarily influence her decision-making regarding payment of benefits under The Plan.

111.    The Plan and its Administrator operated under a structural conflict of interest when it made Plaintiff's Appeal decisions, which must be weighed in determining the extent of any deference its benefits decisions are due.

112.    The Plan Administrator abused her discretion because she based the claims' denial on interpreting the Plan's Eligibility Event so as not to recognize as eligible employees who were placed on the Termination/Job Relocation list even when they were not replaced.

113.    The Plan Administrator relied upon a communication entitled "Windsor Transition, Frequently Asked Questions, dated December 2017, a year prior to Plaintiff's Terminations dates that included questions and answers as follows:

> **Q:**    **What happens to my current position if I am not able to make a decision by January 15, 2018, but change my mind in the future, is the option to relocate still available?**
>
> **A:**    *As long as the position has not been filled*, **your decision to relocate will still be available.**
>
> **Q:**    **If I am unable to relocate or consider another KM position, what will happen to my current position?**
>
> **A:**    *KM will hold your job in Windsor, CT until such time that your position will be transitioned to another KM location.*
>
> **Q:**    **Will severance packages be extended to an employee who either chooses to retire or is unable to transition to another KM location? If so, is there a retention period/time commitment on the part of the employee?**
>
> **A:**    **Employees are being offered a job contingent upon satisfactory performance, therefore, no severance packages are being offered.** *Our goal is to retain our staff*, **provide a smooth transition for employees who will be relocating, and** *ensure that there is no business interruption.*

114.    The Plan Administrator acted arbitrarily and capriciously by basing her Decision to deny benefits because these positions were filled without reviewing hiring, payroll, job descriptions, employee profiles, Executive Management memorandum, communications regarding reduction in work force and terminations, and anticipation of employee relocations and

business interruption and any of the other relevant documents that Plaintiff requested in his Appeal to support the Decision to deny benefits.

115.    In refusing to provide these relevant documents, The Plan Administrator abused her discretion and denied Plaintiff a full and fair review of his claim.

116.    The Plan Administrator abused her discretion by failing to consider the arguments that Plaintiff and other employees similarly situated were terminated and that their positions were not filled.

117.    The Plan Administrator abused her discretion because she was bound by the Plan not to discriminate, but the designation of some of the participants as eliminated and eligible for severance and the designation of others as relocated and not eligible was conducted in a discriminatory manner and thus violating the Plan's provision barring discrimination.

WHEREFORE, and for the foregoing reasons, Plaintiff respectfully requests this Court grant the following relief:

1.  Awarding Plaintiffs Benefits due under the terms of the Severance Plan to which they are entitled;

2.  Awarding Plaintiffs Attorney's fees pursuant to ERISA §502(g);

3. Awarding Plaintiffs Punitive damages,

4.  Awarding Interest and costs of suit; and

3.  Awarding all such other relief as this Court deems equitable and just under the circumstances.


Dated: October 21, 2021                    THE CLANCY LAW FIRM, P.C.


                                           By: __/s/_____
                                            Donna H. Clancy, Esq.

24