**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| JAMES CEZUS *and other similarly situated employees*,<br><br>Plaintiffs,<br><br>v.<br><br>KONICA   MINOLTA   BUSINESS SOLUTIONS U.S.A., INC.,<br><br>Defendant. | Civil Action No. 21-792 (JXN)(LDW)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Plaintiff James Cezus's ("Plaintiff") motion for class certification under Federal Rule of Civil Procedure[1] 23. (ECF No. 100.) Defendant Konica Minolta Business Solutions, U.S.A., Inc. ("Defendant") opposed (ECF No. 101); and Plaintiff replied (ECF No. 102). This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). The action was removed to this Court pursuant to 28 U.S.C. §§ 1446(a) and 1441(a). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's motion for class certification is **GRANTED**.

---

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

## I.     BACKGROUND

### A.     Statement of Facts

#### i.     *The Relocation*

Two Japanese technology companies merged in 2003 to form Defendant. (DeSantis Aff. ¶ 3, ECF No. 101-2.) One company, Konica, had an office in Windsor, Connecticut ("Windsor Office"). (*Id.*) The other, Minolta, had an office in Ramsey, New Jersey ("Ramsey Office"). (*Id.*) Though Defendant initially maintained both offices after the merger (*id.*), by 2016, Defendant sought to consolidate its operations in one place. (*Id.* ¶ 11.) After reviewing several possible locations for a new headquarters, Defendant chose to move most of its Windsor operations to the Ramsey Office. (*Id.* ¶ 14.)

In connection with its consolidation plan, Defendant applied for tax credits through the "Grow NJ program" in September 2017. (*See id.* ¶¶ 19–21; DeSantis Ex. A ("Grow NJ Appl."), ECF No. 107-4.) Grow NJ was an "economic development program intended to encourage the retention and creation of jobs in New Jersey." (DeSantis Aff. ¶ 19.) Under the program, a business that "created and/or retained jobs in New Jersey and made certain capital investments could be eligible for tax credits over a [ten]-year period, per job and per year." (*Id.*) To obtain Grow NJ tax credits, Defendant committed to (a) bring "approximately 400 additional jobs to New Jersey," with at least 300 of those jobs coming from the Windsor Office; (b) invest more than $19 million in expanding the Ramsey Office; and (c) maintain the Ramsey Office as Defendant's headquarters for at least fifteen years. (*Id.* ¶ 24; Grow NJ Appl.) As part of its application, Defendant supplied the New Jersey Economic Development Authority ("EDA") with a list of 852 employees working in the Windsor and Ramsey Offices, along with forty-eight new positions Defendant expected to fill. (DeSantis Aff. ¶ 25; DeSantis Ex. B ("EDA Emp. Spreadsheet"), ECF No. 107-5.)

2

Two months later, on November 14, 2017, the EDA approved Defendant's Grow NJ application. (DeSantis Aff. ¶ 27; DeSantis Ex. C ("EDA Approval Letter"), ECF No. 107-6.) The EDA offered Defendant over $29 million in tax credits. (EDA Approval Letter at 3.) In exchange, Defendant agreed to create 391 new jobs, most of which would be transferred from the Windsor Office. (*Id.* at 2; DeSantis Aff. ¶ 27.)

The next day, Defendant's CEO[2] announced the company's relocation plans in an employee town hall meeting at the Windsor Office. (McVeigh Aff. ¶ 12, ECF No. 101-4.) The CEO explained most jobs at the Windsor Office would be transferred to the Ramsey Office within 6 to 18 months. (*Id.* ¶ 13.) According to the CEO, Windsor Office employees could continue working for Defendant at its Ramsey, Arizona, or Florida offices, and would be eligible for relocation benefits. (*Id.*; Cezus Dep. 32:18–23, ECF No. 101-1.) The CEO advised that affected employees who refused to accept a transfer would not receive severance benefits. (McVeigh Aff. ¶ 13; Cezus Dep. 46:1–47:22.) Defendant regularly emailed Windsor Office employees in the following months reiterating that employees who transferred from Windsor to Ramsey would keep their title, pay, and seniority and get a relocation bonus; but that employees who refused to transfer would not receive severance. (McVeigh Aff. ¶¶ 17–21.)

Between mid-2018 and October 2018, Defendant sent each soon-to-be-relocated employee a sixty-day notification letter, notifying the employee that their position would be transferred and setting a deadline for the employee to inform Defendant whether they would transfer with their position. (*Id.* ¶ 22.) By early October 2018, Defendant "determined that all departments and positions that were relocating to Ramsey would move by the end of 2018." (*Id.* ¶ 24.)

---

[2] Richard K. Taylor.

By the end of 2018, eighty-four employees transferred from the Windsor Office. (*See* Pl.'s Ex. L ("Affected Emp. List"), ECF No. 107-1.) Another large group of employees resigned before the final transfer. (*Id.*) Roughly 120 employees refused to transfer and kept working at the Windsor Office until the final transfer; they were terminated on December 14, 2018. (*Id.*) A handful of positions at the Windsor Office were not transferred. (McVeigh Aff. ¶ 35.) Some departments "were always expected to stay" at the Windsor Office. (*Id.*) Other positions were "duplicative of positions" at the Ramsey Office, and were eliminated. (*Id.*) Employees in duplicative positions were given severance. (*Id.*) In 2025, Defendant sold the Windsor Office at a loss. (DeSantis Aff. ¶ 45.)

### ii.    *The Severance Plan*

Defendant adopted a severance plan ("Plan") in 2015. (*See* McVeigh Ex. A ("Plan") § 1.3, ECF No. 101-4.) The Plan was a "welfare benefit plan," as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.* (*Id.* § 1.2.) Under the Plan, an employee is eligible for severance if the employee is terminated due to an "Eligible Event." (*Id.* § 3.1.) A reduction in force ("RIF") is an "Eligible Event." (*Id.* § 2.5.) Within the Plan, a RIF means Defendant (a) has permanently eliminated one or more jobs and (b) has classified the termination as a RIF. (*Id.* § 2.15.) The Plan allowed Defendant to "determine, in its sole and absolute discretion, whether or not an employee has a Termination of Employment due to a [RIF]." (*Id.*) A RIF, however, does not include an employee's resignation, regardless of the reason. (*Id.*) Moreover, the Plan barred severance for any employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (*Id.* § 3.1.01.)

### iii.    *Plaintiff*

Plaintiff worked for Konica and, later, Defendant in the Windsor Office from 1985 to 2018. (Second Am. Compl. ("SAC") ¶¶ 28–30, ECF No. 25.) On October 15, 2018, Plaintiff received notice that his position was being moved to Ramsey. (Cezus Dep. at 73:9–23.) Plaintiff had one week to inform Defendant about whether he would transfer. (*Id.*) Plaintiff told Defendant he would not accept the transfer. (*Id.* at 75:3–25.) Thereafter, Plaintiff worked at the Windsor Office until he was terminated on December 14, 2018. (*See* McVeigh Aff. ¶ 34; Affected Emp. List.) Plaintiff sought severance benefits, which Defendant's Plan Administrator denied, as Plaintiff refused to transfer to the Ramsey Office. (SAC ¶¶ 72–73.) The Plan Administrator then denied Plaintiff's appeal. (*Id.* ¶ 85.)

### B.    Procedural History

Plaintiff filed this putative class action lawsuit in New Jersey Superior Court on December 17, 2020. (*See* Compl., ECF No. 1-1.) Defendant timely removed to this Court. (*See* Notice of Removal, ECF No. 1.) Plaintiff amended the Complaint twice. (Am. Compl., ECF No. 14; SAC.)

The Second Amended Complaint alleges that Defendant used the relocation from Windsor to Ramsey as a guise to conduct a mass layoff without having to pay severance. (SAC ¶¶ 41–46.) Plaintiff argues that Defendant knew most Windsor employees, including Plaintiff, would not accept a transfer to a facility 123 miles away. (*Id.* ¶¶ 46, 50, 59.) Plaintiff claims Defendant kept the Windsor Office open, but never filled the relocation-induced vacancies, resulting in what is effectively a reduction in force. (*Id.* ¶ 54.) And, according to Plaintiff, had Defendant properly designated Plaintiff's position as "eliminated," he would have been eligible for severance. (*Id.* ¶ 60.) Plaintiff brought the Second Amended Complaint and now seeks to certify on behalf of the following class:

> All eligible participants in Konica Minolta Business Solutions, U.S.A, Inc.'s severance and/or retirement plan entitled Amended and Restated Konica Minolta Severance Plan adopted and effective January 1, 2015 ("The Plan" or "Severance Plan"), who, as employees of the Company, experienced Termination of Employment under the guise of relocating Plaintiff, and similarly situated employees, to new positions at a New Jersey facility of the Company, which Defendant knew would be near impossible for the proposed employee Class Members to accept, and as such, would suffer termination. As these employees were not intended to be replaced and their positions were planned to be eliminated and/or consolidated, these employees were eligible for, yet denied benefits under the Plan.

(*Id.* ¶ 95; Pl.'s Moving Br. at 9, ECF No. 100-1.)

Plaintiff moved for class certification on November 21, 2025. (*See* Mot. for Class Certif., ECF No. 100.) Plaintiff argues (1) his proposed class is numerous because it includes up to 400 Windsor Office employees; (2) this case raises at least one common question of fact or law because class-wide liability depends on interpreting the Plan and on whether Defendant disguised a RIF as a relocation; (3) his claims are typical of the class because he does not assert any claims for anything aside from severance benefits; (4) he is an adequate class representative because his interests do not conflict with those of class members, and his counsel will secure "the best possible recovery" for the class; and (5) the class is readily ascertainable based on data Plaintiff could obtain from the Plan's administrator through class discovery. (Pl.'s Moving Br. at 14–20, ECF No. 100-1.)

Plaintiff claims the Court may certify the class under Rules 23(b)(1), (b)(2), or (b)(3). Plaintiff states that certification is proper under Rule 23(b)(1) because the Plan Administrator has a duty to treat all class members alike, and separate lawsuits could force the Plan Administrator to treat plan members differently. (*Id.* at 20–22.) According to Plaintiff, certification under Rule 23(b)(2) would also be proper because Defendant has refused to act on grounds applicable to the entire class, such that injunctive relief would be appropriate. (*Id.* at 22.) Finally, Plaintiff alleges

6

that certification is appropriate under Rule 23(b)(3) because (a) common questions of law predominate over individual questions, as the same provisions of the Plan apply to all class members and all class members were subject to the relocation; and (b) a class action is superior to class members bringing individual lawsuits.

Defendant does not oppose Plaintiff's class certification motion based on numerosity or adequacy of Plaintiff's counsel. (*See* Def.'s Opp'n at 25 n.14, ECF No. 101.) Rather, Defendant argues that (1) Plaintiff's theory that the relocation was a RIF in disguise lacks support in the record; (2) this case does not present a common question of law or fact because the Plan's eligibility requirements for severance must be determined on an employee-by-employee basis, and the Plan gives Defendant sole discretion to determine whether an employee was terminated due to a RIF; (3) a common question does not predominate because "each class member must prove that his or her position was not transferred to Ramsey, but was in fact eliminated"; (4) plaintiff fails to show the class is "clearly defined" or "ascertainable"; (5) certification under Rule 23(b)(1) is inappropriate because the Plan Administrator must determine severance eligibility on an employee-by-employee basis; and (6) certification under Rule 23(b)(2) is unwarranted because the Second Amended Complaint does not seek injunctive relief. (*See generally id.*) Plaintiff replied. (*See* Pl.'s Reply, ECF No. 102.)

## II.    <u>LEGAL STANDARD</u>

Rule 23 sets forth a two-pronged standard for class certification. To obtain certification, a plaintiff must demonstrate that the putative class meets the threshold requirements of Rule 23(a) as well as one of the three Rule 23(b) categories under which she wishes to proceed on behalf of a class. Fed. R. Civ. P. 23; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590 (3d Cir. 2012).

Under Rule 23(a), a class may be certified only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). These four requirements are respectively referred to as "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 308–09 (3d Cir. 1998); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

Rule 23(a)(1) calls for certification if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A class is generally numerous "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40." *Marcus*, 687 F.3d at 595. Under Rule 23(a)(2), the commonality requirement is satisfied where "there are questions of law or fact common to the class."[3] Plaintiffs also must show the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).[4] Under Rule 23(a)(4), the representative parties must fairly and adequately protect the interests of the class. *See Beck v. Maximus, Inc.*, 457 F.3d 291, 296 (3d Cir. 2006) (noting that adequacy "assures that the

---

[3] "Rule 23(a)(2)'s commonality requirement requires that the putative class members 'share at least one question of fact or law in common with each other.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 127 (3d Cir. 2018) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004)). Commonality "does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification," *In re AremisSoft Corp. Sec. Litig.*, 210 F.R.D. 109, 120 (D.N.J. 2002) (internal citation and quotation omitted). "Since a single question of fact suffices to satisfy commonality," this requirement "is easily met." *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018).

[4] "The typicality requirement 'centers on whether the interests of the named plaintiffs align with the interests of the absent members.'" *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 75 (D.N.J. 2019) (quoting *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001)). "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Id.* (quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183-84 (3d Cir. 2001). "Complete factual similarity is not required [to establish typicality]; just enough factual similarity so that maintaining the class action is reasonably economical and the interests of the other class members will be fairly and adequately protected in their absence." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 598 (3d Cir. 2009) (internal quotation omitted).

named plaintiffs' claims are not antagonistic to the class and that the attorneys for the class representatives are experienced and qualified."); *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 313 (3d Cir. 2007) (observing that Rule 23(a)(4) "mainly seeks 'to uncover conflicts of interest between named parties and the class they seek to represent.'" (citation omitted)).

"If the Rule 23(a) criteria are satisfied, the court must also find that the class fits within one of the three categories of class actions defined in Rule 23(b)." *Prudential*, 148 F.3d at 309. Rule 23(b)(1) covers matters where separate actions by or against individual class members would create a risk of "incompatible standards of conduct for the party opposing the class," Fed. R. Civ. P. 23(b)(1)(A),[5] or would either "as a practical matter . . . be dispositive of the interests" of nonparty class members or "substantially impair or impede their ability to protect their interests," Fed. R. Civ. P. 23(b)(1)(B).[6]

Rule 23(b)(2) "permits class actions for declaratory or injunctive relief where 'the party opposing the class has acted or refused to act on grounds generally applicable to the class.'" *Amchem Prods.*, 521 U.S. at 614. "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples." *Id.*

Rule 23(b)(3) applies when "'class-action treatment is not as clearly called for' as it is in Rule 23(b)(1) and (b)(2) situations, Rule 23(b)(3) permits certification where class suit 'may nevertheless be convenient and desirable.'" *Id.* at 615 (citation omitted). Rule 23(b)(3) has two requirements: (1) "that the questions of law or fact common to class members predominate over

---

[5] Rule 23(b)(1)(A) applies "where the party is obliged by law to treat the members of the class alike (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997) (citation omitted).

[6] Rule 23(b)(1)(B) "includes, for example, 'limited fund' cases, instances in which numerous persons make claims against a fund insufficient to satisfy all claims." *Amchem Prods.*, 521 U.S. at 614 (citation omitted).

any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Third Circuit has also recognized an "implicit ascertainability requirement," *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015), which the Court must consider "[p]rior to determining whether the requirements of Rule 23 have been met," *Carney v. Goldman*, No. 15-260, 2018 WL 2441766, at *10 (D.N.J. May 30, 2018). A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163 (cleaned up). Ascertainability must be demonstrated under the same "rigorous" standards provided for by Rule 23, which requires a plaintiff to present "evidentiary support" that the proposed method of ascertaining a class will succeed. *Carrera v. Bayer Corp.*, 727 F.3d 300, 306–07 (3d Cir. 2013).

Rule 23 "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The plaintiff "must affirmatively demonstrate his [or her] compliance with the Rule—that is, he [or she] must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* "[T]o certify a class the district court must find that the evidence more likely than not establishes each fact necessary to meet the requirements of Rule 23." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)). "The same analytical principles govern Rule 23(b)." *Behrend*, 569 U.S. at 34. Frequently, the Court's "rigorous analysis" will "overlap with the merits of the plaintiff's underlying claim." *Dukes*, 564 U.S. at 351. Rule 23 "gives no license to

10

shy away from making factual findings that are necessary to determine whether the Rule's requirements have been met." *Marcus*, 687 F.3d at 591. But Rule 23 does not empower a court "to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* The decision to certify a class is left to the discretion of the court. *Hydrogen Peroxide*, 552 F.3d at 310.

## III.   DISCUSSION

### A.   The Class is Ascertainable

The Court must consider the "implicit ascertainability requirement," *Byrd*, 784 F.3d at 163, "[p]rior to determining whether the requirements of Rule 23 have been met." *Carney*, 2018 WL 2441766, at *10. Again, a class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. "If class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Marcus*, 687 F.3d at 593. "Some courts have held that where nothing in company databases shows or could show whether individuals should be included in the proposed class, the class definition fails." *Id.* (collecting cases).

Here, Plaintiff defines the proposed class as:

> All eligible participants in [the Plan], who, as employees of the Company, experienced Termination of Employment under the guise of relocating Plaintiff, and similarly situated employees, to new positions at a New Jersey facility of the Company, which Defendant knew would be near impossible for the proposed employee Class Members to accept, and as such, would suffer termination. As these employees were not intended to be replaced and their positions were planned to be eliminated and/or consolidated, these employees were eligible for, yet denied benefits under the Plan.

(Compl. ¶ 95.)

The Court finds that the proposed class is "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593. Courts must determine: (1) whether the defined class specifies "a particular group that was harmed during a particular time frame, in a particular location, in a particular way" and (2) whether it can "ascertain the class's membership in an objective manner." *Lutz Surgical Partners PLLC v. Aetna, Inc.*, No. 15-2595, 2023 WL 2153806 at *7 (D.N.J. Feb. 21, 2023) (cleaned up).

If a class is certified, the certification order or opinion "must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues or defenses to be treated on a class basis." *Hydrogen Peroxide*, 552 F.3d at 320–21 (quoting *Wachtel v. Guardian Life Ins. Co. of Am.*, 453 F.3d 179, 187 (3d Cir. 2006)); *see* Fed. R. Civ. P. 23(c)(1)(B). "Clearly delineating the contours of the class along with the issues, claims, and defenses to be given class treatment serves several important purposes, such as providing the parties with clarity and assisting class members in understanding their rights and making informed opt-out decisions." *Marcus*, 687 F.3d at 591–92 (citing *Wachtel*, 453 F.3d at 187).

Here, the proposed class includes every employee in the Windsor Office: (1) whose position was selected for transfer from the Windsor Office during the relocation effort; (2) who did not accept the transfer; (3) who was terminated after refusing the transfer; and (4) who was ineligible for severance benefits under the Plan as an employee "who has refused an offer of employment in another division, department, office, or unit of the Company." (Plan § 3.1.01.) The Court readily finds this class (1) can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class

members fall within the class definition." *Byrd*, 784 F.3d at 163. The proposed class members are capable of identification without extensive and individualized fact-finding or "mini-trials." *Marcus*, 687 F.3d at 591–92. Company databases could readily show whether individuals should be included in the proposed class. As such, the proposed class meets the "implicit ascertainability requirement."[7] *Id*. Accordingly, the Court proceeds to determine whether the requirements of Rule 23 have been met. *See Carney*, 2018 WL 2441766, at *10.

### B.    The Class Satisfies Rule 23(a)

#### i.    *Numerosity*

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." No minimum number of plaintiffs "is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40," the prong is met. *Stewart*, 275 F.3d at 226–27.

Plaintiff asserts that the putative members of the Class are so numerous that joinder of all members is impracticable. Plaintiff contends that the Class includes up to approximately 400 Windsor, Connecticut employees formerly employed by Defendant whose positions were affected by Defendant's improper denial of benefits and identified on KMBS' "Relocation/Termination list" but no less than 100. (Pl.'s Moving Br. at 14.) Because classes of more than forty members are numerous, the Court concludes Plaintiff satisfies Rule 23(a)(1). *See Mulder v. PCS Health Sys.*, 216 F.R.D. 307, 312 (D.N.J. 2003).

---

[7] Defendants argue briefly that Plaintiff has not met the ascertainability requirement because Plaintiff "offers only vague references to several different proposed class sizes." (Def.'s Opp'n at 37.) The Court disagrees. The question is whether a class (1) can be "defined with reference to objective criteria"; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Byrd*, 784 F.3d at 163. As discussed above, this class meets both prongs.

### ii.    *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). "[O]nly one question of law or fact in common is necessary to satisfy the commonality requirement . . . ." *Schering Plough*, 589 F.3d at 597 n.10. "The bar for establishing commonality is 'not high' and is 'easily met.'" *In re Insulin Pricing Litig.*, No. 17-699, 2024 WL 416500, at *19 (D.N.J. Feb. 5, 2024) (quoting *In re Pharmacy Benefit Managers Antitrust Litig.*, No. 03-4730, 2017 WL 275398, at *23 (E.D. Pa. Jan. 18, 2017)). "However, a bald assertion that all putative class members suffered a violation of the same law is generally insufficient to satisfy the commonality requirement." *Id.* What matters "is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Ferreras v. Am. Airlines, Inc.*, 946 F.3d 178, 185 (3d Cir. 2019) (quoting *Dukes*, 564 U.S. at 350).

Plaintiff claims this case presents common questions of liability and relief. First, Plaintiff argues that classwide liability requires interpreting and applying Plan provisions applicable to all members of the class, including whether Defendant used the relocation as a guise to conduct a RIF without having to pay putative class members severance benefits. (Pl.'s Moving Br. at 15–16.) Relatedly, Plaintiff asserts that Defendant's interpretation of what constitutes a RIF under the Plan is common to all class members. (*Id.* at 16.) Plaintiff also contends that the amount of relief will be based on benefits calculated in conformity with the proper interpretation of the Plan and ERISA. (*Id.* at 15.)

14

The Court agrees. A classwide proceeding can generate common answers to resolve this litigation, including (1) whether the relocation constituted a RIF under the Plan; (2) whether Defendant conducted a RIF under the guise of a relocation to avoid paying benefits under the Plan; and (3) whether class members "refused an offer of employment in another division, department, office, or unit of the Company." (Plan § 3.1.01.) "The 'glue' holding the class's ERISA claims together is, in other words, is the common reason why their statutory rights and plan benefits were allegedly denied." *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 131 (D.N.J. 2013), *aff'd,* 647 F. App'x 76 (3d Cir. 2016); *see also Cockerill v. Corteva, Inc.*, 345 F.R.D. 81, 106 (E.D. Pa. 2023) ("Because the claims center on how the Employers acted toward the classes as a whole, their disposition is common to all class members.") The Court, accordingly, finds that Plaintiff satisfies the commonality requirement.

### iii.    Typicality

Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To evaluate typicality, courts ask whether the named plaintiffs' claims are "typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck*, 457 F.3d at 296 (quoting *Baby Neal*, 43 F.3d at 55). "The standard for demonstrating typicality is undemanding and requires that 'the claims of the named plaintiffs and putative class members involve the same conduct by the defendant.'" *Papa*, 333 F.R.D. at 75 (quoting *Newton*, 259 F.3d at 183–84). Typicality has three components:

> (1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned with those of the class.

15

*Schering Plough*, 589 F.3d at 599.

Plaintiff's claims use the same legal theories and underlying facts as those of the class. Both Plaintiff's and the class's claims (1) interpret Plan provisions applicable to all members of the class; and (2) assert that Defendant used the relocation as a guise to conduct a RIF and avoid paying severance benefits under the Plan. Plaintiff's interests align with those of the class because Plaintiff seeks to enforce fiduciary duties and recover benefits owed to all class members under the Plan.

Plaintiff's interests do not appear to conflict those of the Class. Nor does it appear Defendant has a unique defense against Plaintiff that would interfere with Plaintiff's representation of the class. Accordingly, the Court concludes Plaintiff will fairly and adequately represent and protect the interests of the members of the Class. Further, Plaintiff and members of the proposed Class have a similar interest in recovering any losses due to them under the Plan because of Defendant's conduct. Moreover, Plaintiff contends that he does not assert any claims relating to the Plan in addition to or different than those of the Class. (Pl.'s Moving Br. at 16–17.) The Court, therefore, concludes by a preponderance of evidence that Plaintiff's claims are typical of the claims of Class members.

### iv.    *Adequacy*

Under Rule 23(a)(4), a class may not be certified unless the representative class members "will fairly and adequately protect the interests of the class." Adequacy involves a two-pronged test: "first, the named plaintiff's interests must be sufficiently aligned with the interests of the absentees; and second, the plaintiff's counsel must be qualified to represent the class." *Lutz*, 2023 WL 2153806, at *10. "Rule 23(a)'s adequacy of representation requirement serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Pet Food*

*Prod. Liab. Litig.*, 629 F.3d 333, 343 (3d Cir. 2010) (cleaned up).

As discussed in the Court's typicality analysis, Plaintiffs' interests are sufficiently aligned with any absent members of the proposed class. Although Defendants do not contest the adequacy of class counsel, the Court notes that proposed Class Counsel, the Clancy Law Firm and Green Savits, are experienced civil litigators, having more than fifty years combined legal experience in New York, New Jersey federal and state courts, have engaged in extensive investigation and discovery in this matter and have experience in complex litigation, class actions and/or ERISA matters. (*See* Clancy Decl., ECF No. 100-2; Kaplan-Khodorovsky Decl., ECF No. 100-4); *Guidry v. Wilmington Tr., N.A.*, 333 F.R.D. 324, 330 (D. Del. 2019) (granting class certification and finding that "[b]ased on the experience of counsel . . . Plaintiff's counsel will fairly and adequately represent the interests of the class.").

### C.      The Class May be Certified Under Rule 23(b)(1)

After satisfying the Rule 23(a) requirements, Plaintiffs must also show that the class is appropriate under Rule 23(b)(1), (b)(2), or (b)(3). *Marcus*, 687 F.3d at 590. The Court finds that certification is proper under Rule 23(b)(1).[8] Rule 23(b)(1) provides for certification if:

> [P]rosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Certification under Rule 23(b)(1)(A) is appropriate "in cases where the party is obliged by law to treat the members of the class alike . . . or where the party must treat all alike as a matter of

---

[8] Because "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)," *Dukes*, 564 U.S. at 345, the Court need not address Plaintiffs' argument in the alternative for certification under Rule 23(b)(2) or (b)(3).

17

practical necessity." *Amchem Prods.*, 521 U.S. at 614. This case meets Rule 23(b)(1)(A)'s requirements because the Plan Administrator has a legal obligation to interpret the terms of the Plan consistently for all similarly situated participants.[9] Individual cases could produce different interpretations of the Plan and set incompatible standards of conduct for the Plan and its administrator, which favors a class wide certification. *See Luense v. Konica Minolta Bus. Sols. U.S.A., Inc.*, No. 20-6827, 2024 WL 2765004, at *8 (D.N.J. May 30, 2024) ("[M]ultiple actions alleging that Defendants breached their fiduciary duties could lead to inconsistent results and incompatible standards for Defendants' conduct moving forward."); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, No. 05-1151, 2009 WL 331426, at *12 (D.N.J. Feb. 10, 2009) ("Pursuing separate actions would raise a substantial risk that different courts would reach inconsistent conclusions about the standards of conduct for the fiduciaries, and that different courts might order conflicting injunctive or other remedies."); *In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Rule 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") Thus, class certification is consistent with and satisfies Rule 23(b)(1)(A).

And, because the Plan Administrator must interpret the Plan consistently for similarly situated participants, resolving a case for one individual class member would, as a practical matter, resolve the case for all other class members. *See Boley v. Universal Health Servs., Inc.*, 337 F.R.D. 626, 639 (E.D. Pa. 2021), *aff'd,* 36 F.4th 124 (3d Cir. 2022) ("Allowing individual participants to pursue separate actions would result in outcomes likely to be dispositive of the interests of other

---

[9] Defendant argues that class members are not similarly situated because the Plan Administrator "would be obligated to consider the individual circumstances of other employees that might be different from Plaintiff's." (Def.'s Opp'n at 39.) Not so. Class members are similarly situated because Plaintiff's "claims are based on [Defendant's] conduct," i.e., that Defendant disguised a RIF as a relocation effort to deprive all class members of ERISA severance benefits. *Schering Plough*, 589 F.3d at 604. Plaintiff's claims do not, as Defendant argues, depend "on unique facts and individual relationships." *Id.*

Plan participants."). The Court, accordingly, finds certification is also appropriate under Rule 23(b)(1)(B).

## IV.    **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for class certification and appointment of class representatives and counsel under Rule 23 (ECF No. 100) is **GRANTED**. An appropriate Order accompanies this Opinion.

DATED: 6/23/2026

_____
**JULIEN XAVIER NEALS**
**United States District Judge**